A91A0887. JONES et al. v. WORTHAM et al.
(411 SE2d 716)

COOPER, Judge.

Appellant Michelle Camp ("Camp") leased an automobile from appellee AAA Rent-A-Car, Inc. ("AAA") because the vehicle that she owned was being repaired. At the time she leased the car, Camp was insured under an automobile insurance policy issued by appellant Safeway Insurance Company of Georgia ("Safeway"). At that time, AAA provided insurance coverage on the vehicles that it owned pursuant to a self-insurer certificate as authorized by OCGA § 40-9-101. Camp obtained possession of the leased vehicle after she signed a written rental agreement and while she was operating the leased vehicle, she had an accident in which appellee Pamela Wortham ("Wortham") was injured. Appellant Jones is Camp's father and was only involved in the suit because his credit card was used by Camp to pay for the rental car. Wortham originally sued Camp and AAA; Jones and Safeway were brought into the suit by AAA as third-party defendants; and Camp filed a cross-claim against AAA. A jury rendered a verdict on Wortham's claim for $7,000 in favor of both Wortham and AAA and against Camp. Camp, Jones and Safeway moved for summary judgment seeking a determination that AAA was the primary insurer, and AAA moved for summary judgment seeking a determination that Safeway was the primary insurer. The trial court

granted the motion of AAA and held that Safeway was the primary insurer to satisfy the judgment. The trial court based its decision solely upon language contained in the rental agreement signed by Camp which stated, "RENTER FURTHER AGREES THAT AAA Rent-A-Car, Inc. FURNISHES NO INSURANCE WHATSOEVER TO THE RENTER and renter expressly agrees and warrants that he has insurance that covers the rented vehicle and the operation thereof and his insurance is primary coverage. . . ." Appellants contend that the trial court erred in granting AAA's motion for summary judgment, in denying Camp's motion and in finding that Safeway was the primary insurer.

All parties to this appeal state that the issue involved is the determination of the primary insurer as between the driver/lessee's insurer and the owner/lessor's insurer, thus calling upon us to decide the question left open in *Wausau Ins. Co. v. Lightnin' Truck Rental*, 194 Ga. App. 819 (2) (392 SE2d 32) (1990). This case, however, has generated two amicus briefs in which it is contended that reliance on the language in the rental contract could allow "U-drive-it" (see OCGA § 40-9-102) rental agencies to completely exempt themselves from the duty to provide any liability insurance to third persons via a disclaimer in the rental contract. We do not interpret the language in the rental agreement in such a manner. The language of the rental agreement at issue here is ambiguous in that it does not specify whether the insurance mentioned is liability insurance which inures to the benefit of third parties or insurance which only covers the driver and/or the vehicle involved. See *Copy Systems of Savannah v. Page*, 197 Ga. App. 435, 436 (398 SE2d 784) (1990). Applying the rule of construction that both leases and insurance contracts are to be construed in favor of the lessee and/or the insured, see *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333 (1) (380 SE2d 686) (1989); *Farm Supply Co. of Albany v. Cook*, 116 Ga. App. 814 (2) (159 SE2d 128) (1967), we conclude that the language at issue does not exempt the lessor from providing liability insurance for injury to third parties. Nor do we find that OCGA § 40-9-102, which provides that lessees from U-drive-it agencies furnish their own insurance, completely exempts the agencies from their duty to procure liability insurance as owners of vehicles pursuant to OCGA § 33-34-4 (a).

Although AAA is not completely exempt from providing liability insurance pursuant to the rental agreement, the question phrased by both parties hereto remains — which liability insurance is the primary insurance? This is an issue of first impression. It is undisputed that both Safeway's policy and AAA's certificate of self-insurance cover the accident at issue and each insurance is sufficient to satisfy the judgment entered in favor of Wortham. In our analysis, we must consider several statutory and case law authorities, none of which

speak directly to the issue at hand. "Georgia has an 'automobile related plan by which . . . insurance "follows the car." ' [Cit.] In line with this policy, OCGA § 33-34-4 (a) mandates that '(n)o owner of a motor vehicle required to be registered in this state or any other person . . . shall operate or authorize any other person to operate the motor vehicle unless the *owner has insurance on the vehicle providing the following minimum . . . coverage. . . .*' " *Industrial Indem. Co. v. Walck*, 192 Ga. App. 754, 755-756 (386 SE2d 521) (1989). Thus, as a general rule "the onus to procure insurance is put on the owner and others are prohibited from operating the vehicle until that is done." *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 694 (353 SE2d 186) (1987). However, the legislature has made exceptions to this general rule. For example, "OCGA § 33-34-3 (e) . . . is in derogation of this basic scheme and allows the operator's insurance to be primary when driving a car owned by an entity engaged in the business of selling motor vehicles." *Walck*, supra at 756. OCGA § 33-34-3 (e) further provides that in this situation when both the operator and the owner are insured under complying policies the owner's policy shall afford excess coverage. Although no similar statutory provision exists with respect to U-drive-it agencies, OCGA § 40-9-102 does state that "[a]ny person who rents motor vehicles from a U-drive-it owner is required to provide his own insurance. . . ." The statute also penalizes a U-drive-it owner if a motor vehicle is turned over to any person who does not have insurance. The operator's insurance company has evaluated and insured the risks present when the operator drives a vehicle, which is why we believe OCGA § 40-9-102 requires each individual operator to carry insurance. Although the legislature has not spoken to the specific issue raised herein, we have considered the statutes, and we conclude that in the instant case, the operator's insurance should be primary and the owner's insurance should afford excess coverage, if any.

We note that Safeway's policy did contain an "excess insurance" clause which stated that any liability insurance provided by the company for a vehicle not owned by the insured shall be excess of any other collectible insurance. Typically, when the owner and the driver are both covered by insurance and one of the policies contains an "excess insurance" clause pertaining to non-ownership coverage, the owner's policy is primary and the other policy affords the excess coverage. *Georgia Mut. Ins. Co. v. Southern Gen. Ins. Co.*, 181 Ga. App. 238, 239-240 (351 SE2d 658) (1986). We do not deem this rule to be controlling in the instant case because here a U-drive-it agency is involved. These agencies have received special treatment by the legislature in OCGA § 40-9-102. On the basis of the existing statutes, as discussed above, we affirm the decision of the trial court granting summary judgment to AAA and finding that Safeway is the primary

insurer.

*Judgment affirmed. Birdsong, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 6, 1991 —
RECONSIDERATION DENIED OCTOBER 30, 1991 — 

*Crim & Bassler, Harry W. Bassler, Joseph M. Murphey,* for appellants.

*Mitchell & Mitchell, Darel C. Mitchell, Rand & Ezor, Samuel S. Olens,* for appellees.